**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TARA HART,

    Plaintiff,

vs.                                                                 CASE NO. 3:10-cv-531-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's Complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income disability payments ("SSI"). Plaintiff filed a brief in opposition to the Commissioner's decision (Doc. #19). Defendant filed a brief in support of the Commissioner's decision to deny disability benefits (Doc. #20). The Commissioner has filed the Transcript of the underlying administrative proceedings and record evidence (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in its making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the Commissioner's decision is **REVERSED AND REMANDED**.

## I. PROCEDURAL HISTORY

On April 25, 2007, Plaintiff filed an application for DIB and for SSI (Tr. 131-33). Plaintiff alleges her disability began on August 25, 2006 (Tr. 131). At the hearing, the date of disability onset was amended to February 1, 2008 (Tr. 24-25). Plaintiff claims to be disabled as a result of osteoarthritis in her right knee and back, diabetes, asthma, and hypertension (Tr. 165-69, Adult Disability Report; Tr. 24-25).

Both of Plaintiff's claims were denied on July 20, 2007 (Tr. 79-84). Plaintiff requested reconsideration and was denied again on November 28, 2007 (Tr. 89-93). Plaintiff filed a request for a hearing in front of an administrative law judge ("ALJ"), which was held on February 26, 2009 before ALJ Stephen Calvarese (Tr. 94-95, 21). Plaintiff Tara Hart and an impartial vocational expert ("VE"), Melissa Brooks, appeared and testified at the hearing (Tr. 21-63). The ALJ found Hart was not disabled by his decision dated August 2, 2009 (Tr. 7-20). Plaintiff requested a review of the hearing, which was denied by the Appeals Council on April 30, 2010, making the hearing decision the final decision of the Commissioner and subject to review under 42 U.S.C. § 405(g) (Tr. 1-6). Plaintiff's current counsel of record, Ms. Chantal J. Harrington, Esq., filed the instant action in federal court (Doc. #1).

## II. BACKGROUND

Plaintiff was born on March 26, 1973 and was thirty-five at the time of the hearing before the ALJ (Tr. 31). Plaintiff's past relevant work includes cashier, data entry, childcare, highlighter, opener/boarder, phone operator, proof operator, picker, and repair warehouse associate (Tr. 167).

In the course of her treatment, Plaintiff has seen several physicians. Plaintiff's

2

treating physicians are those doctors at Family Care Partners-Northside, including: Dr. Allen Okie, Dr. Kendra Williams, Dr. Tra'Chella Johnson-Foy, Dr. Michelle Aquino-Caballero, and Dr. Elena Noble. Additional treating physicians of the Plaintiff are Dr. Stephen Augustine of Jacksonville Orthopaedic Institute, Dr. Donald Chipman of Riverside Spine, and Dr. Thomas Fix of Signet Diagnostic Imaging. Plaintiff's examining physicians include: Dr. William Campbell and Dr. Richard Grimsley of Jacksonville Orthopedic Institute; Dr. James Nealis of Nealis Neurology,[1] Dr. Sean Kuyper of Northside Imaging Center, and Dr. F. Hakims of Memorial Hospital. Two state agency psychologists conducted records reviews and completed Psychiatric Review Technique forms concerning Plaintiff's claim to mental impairments (Tr. 240-53, 347-60). Residual functional capacity reports ("RFC") on Plaintiff's physical capacities were prepared by a reviewing physician and a single decision maker ("SDM") (Tr. 262-69 and 361-86).[2]

Plaintiff's chief complaint is the pain in her right knee, which reportedly began on April 26, 2006 (Tr. 325). A x-ray completed on May 17, 2006, showed mild to moderate arthritis in Plaintiff's right knee (Tr. 322). A MRI of the knee completed on September 6, 2006 found severe osteoarthritis, bone cyst, and macerated menisci (Tr. 343). A second

---

[1] Plaintiff saw Dr. Nealis for issues of possible carpal tunnel syndrome (Tr. 535-36). Nealis commented Plaintiff had a "bizarre way of walking" and a "non-physiological type of gait," further calling it a "goose step." He concluded her nerve tests were normal. *Id.*

[2] A SDM is not a medical doctor. The Court notes that a SDM is not entitled to any weight. *See Bolton v. Astrue*, No. 3:07-cv-612-J-HTS, 2008 WL 2038513, at *3 (M.D.Fla. May 12, 2008) (citing *Velasquez v. Astrue*, Civil Action No. 06-cv-02538-REB, 2008 WL 791950, at *3 (D.Colo. Mar.20, 2008)); *see also Johnson v. Barnhart*, No. 03-166-B-W, 2004 WL 1529296, at *4 (D.Me. June 24, 2004) (report and recommendation of magistrate judge adopted by *Johnson v. Barnhart*, 2004 WL 1572705 (July 13, 2004) (finding opinion of SDM is like that of a lay person and is not entitled to any weight)).

MRI of Plaintiff's right knee on December 6, 2007 showed severe arthritis of the knee, most marked in the medial compartment with meniscal tearing that may have progressed since the first MRI (Tr. 408).

On February 21, 2008, Dr. Augustine performed arthroscopic surgery on Plaintiff's right knee (Tr. 496-509). At Plaintiff's one week and one month post surgery visits with Dr. Augustine, Plaintiff was instructed to remain non-weight bearing on her right knee (Tr. 459-60).[3] Two months post surgery, Dr. Augustine indicated Plaintiff could be "weight bearing as tolerated" on her right knee (Tr. 458). Four months post surgery, Dr. Augustine informed Plaintiff she should use a cane (Tr. 457). During Plaintiff's post surgery visits with Dr. Augustine, Plaintiff continued to complain of pain in the right knee (Tr. 455-60).

In November 2008, one of Plaintiff's treating physicians at Family Care Partners, Dr. Okie, referred Plaintiff for pain management at Riverside Spine with Dr. Chipman due to Plaintiff's knee surgery and continued pain (Tr. 510-13). On November 26, 2008, at Plaintiff's first meeting with Dr. Chipman, he found she had a normal non-antalgic tandem gait (Tr. 511). The record indicates Plaintiff continued to see Dr. Chipman for approximately seven months (Tr. 541). On or about April 8, 2009, Dr. Chipman wrote a "To Whom It May Concern" letter stating, "it is my medical opinion that Ms. Tara Hart has to

---

[3] "Non-weight bearing" instructs a patient to place no weight on a leg, whereas "weight bearing as tolerated" instructs a patient that weight may be placed on a leg up until pain, and "full weight bearing" indicates full body weight may be placed on a leg. *See* Ohio Health, *Weight Bearing Orders*, (2003), http://www.ohiohealth.com/documents/orthopedics/weight_bearing_orders.pdf (last visited Sept. 16, 2011).

elevate her legs above hip level at least two hours in any eight hour workday" (Tr. 531).[4] On June 11, 2009, Dr. Chipman responded to a questionnaire prepared by Plaintiff's attorney, in which the doctor indicated Plaintiff could perform light work (Tr. 540-41).[5]

At the hearing on February 26, 2009, the VE testified that if Plaintiff were required to elevate her legs above hip level at work she would no longer be able to perform any of her past relevant work (Tr. 60). The VE stated, "anything above a small stool would not be accommodated at a worksite" (Tr. 60). The VE responded in the affirmative to the inquiry of whether the requirement for Plaintiff to elevate her leg (or legs) would eliminate all work (Tr. 60-61). In response to this information, the ALJ agreed to leave the record open so Plaintiff's attorney could obtain a letter from one of Plaintiff's primary care physicians stating the need for Plaintiff's leg to be elevated.[6] *Id.* As previously explained, Dr. Chipman in April 2009 wrote a letter stating Plaintiff must elevate her legs (Tr. 531). This letter was submitted to ALJ Calvarese on May 19, 2009 by Plaintiff's attorney (Tr. 223).

The ALJ concluded Plaintiff had the severe medically determinable impairments of

---

[4] Given Plaintiff's complaints of pain only in the right leg/knee, the Court finds it curious Dr. Chipman would find Plaintiff needs to elevate both her legs during a workday.

[5] Dr. Chipman responded: Plaintiff could lift 10-20 pounds frequently, 20-30 pounds occasionally, sit for 1 hour at a time and 4-6 hours in an 8 hour work day, walk 100 feet, work a simple unskilled job 6-8 hours in a day, need a 15 minute break every 1-2 hours in the workday, and Plaintiff's level of concentration would be affected by pain and other symptoms.

[6] The ALJ indicated he would like a medical statement from Dr. Williams or Dr. Augustine detailing whether or not Hart needed to elevate her leg and the affect of such on her ability to work (Tr. 62). Neither Dr. Williams nor Dr. Augustine provided such a letter in the record. In fact, a letter from Plaintiff's attorney indicates two requests were made of Dr. Augustine, who apparently declined to respond (Tr. 222). The only such letter in the record is from Dr. Chipman (Tr. 223, 531).

"status post arthroscopic surgery on the right knee, with continued pain; lumbar spondylosis, with mild low back pain; hypertension controlled by medication; diabetes mellitus, under medical control; asthma, controlled with medication; hyperlipidemia and, obesity" (Tr. 18-19). The ALJ found these limitations do not support Plaintiff's allegation that she is disabled from all work (Tr. 19). Based upon the evidence in the record, specifically Dr. Chipman's June 2009 questionnaire with the support of the two RFCs, the ALJ found Plaintiff could still perform less than a full range of light work consistent with her RFC (Tr. 19-20). Relying in part on the VE's testimony, the ALJ concluded Plaintiff, despite her impairments, is capable of performing past relevant work as a data entry clerk, proof machine operator, general clerk, and central office operator (Tr. 20).

## III. STANDARD OF REVIEW

Plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905. The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).[7] Plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ

---

[7] All references made to 20 C.F.R. will be to the 2011 edition unless otherwise specified.

6

applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; accord, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### IV. ISSUES AND ANALYSIS

Plaintiff raises three issues. Plaintiff alleges the ALJ erred by not considering the medical opinion of Dr. Chipman as a whole (Doc. #19 at 1). Plaintiff claims the ALJ "picked and chose" parts of Dr. Chipman's opinions to use, while ignoring other opinions by Dr. Chipman. *Id.* at 12. Specifically Plaintiff claims the ALJ in crediting Dr. Chipman's June 2009 opinion, did not limit Plaintiff to unskilled work, did not include the requirement of

breaks, did not include the need to change positions every hour, and did not include moderate concentration limitations from the RFC. *Id.* Plaintiff further alleges, the ALJ failed to mention, credit, or discredit the medical opinion expressed in Dr. Chipman's April 2009 letter. *Id.* Second, Plaintiff alleges the ALJ erred by posing an incomplete hypothetical question to the VE. *Id.* at 16. Specifically, Plaintiff asserts the ALJ erred when he did not include the Plaintiff's push/pull function limitation as identified in the RFC. *Id.* at 17. Lastly, Plaintiff alleges the ALJ erred by not considering the Plaintiff's need to elevate her leg at a worksite based upon the VE's testimony and Dr. Chipman's April 2009 letter. *Id.* at 18.

Defendant contends, contrary to Plaintiff's brief, the ALJ did properly credit Dr. Chipman's June 2009 opinion (Doc. #20 at 8). Defendant maintains Dr. Chipman did not specifically limit Plaintiff to unskilled work or require a sit/stand option, instead he only stated Plaintiff could work six to eight hours a day, and made no mention of a limitation to unskilled work with a sit/stand option. *Id.* at 8-9. Dr. Chipman stated Plaintiff required a fifteen-minute break every one to two hours; Defendant argues the ALJ included this as "normal breaks" in his decision. *Id.* at 9. As to Plaintiff's limitations in concentration, Defendant asserts the ALJ properly evaluated this limitation and chose not to adopt it. *Id.* at 10-11. The ALJ instead chose to give weight to Dr. Bee's opinion that Plaintiff did not have a severe mental impairment. *Id.* Defendant further claims the ALJ properly considered Dr. Chipman's April 2009 letter and the requirement Plaintiff need elevate her leg, despite not mentioning it, because the ALJ stated he was giving little weight "to reports that are inconsistent with the medical record" and that he had "reviewed the evidence of record, whether or not that evidence is cited in this decision" (Tr. 18). Defendant also

states the ALJ properly used the VE testimony regarding Plaintiff's ability to perform past relevant work, despite not including the push/pull function restriction in the hypothetical (Doc. #20 at 14). Defendant claims the omission by the ALJ is harmless as the positions cited by the VE do not require use of push/pull functions with the lower extremities per the Dictionary of Occupational Titles. *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles*, (4th ed. 1991) 203.582-054, 1991 WL 671700 (data entry clerk), 217.382-010, 1991 WL 671944 (proof machine operator), 209.562-010, 1991 WL 671792 (general clerk), 235.462-010, 1991 WL 672169 (central officer operator).

Upon review of the ALJ's decision and the record evidence, the Court finds reversible error in the failure of the ALJ to even mention the April 2009 medical opinion of Dr. Chipman that Plaintiff needs to elevate her legs. It is unclear whether the ALJ considered this medical opinion. Therefore the Court will limit it's findings and analysis to this dispositive issue.

**The opinion of Dr. Chipman and the requirement that Plaintiff need elevate her leg**

Upon review of the entire record, the Court finds the only mention of a need for Plaintiff to elevate her leg (or legs) is in the April 2009 letter from Dr. Chipman. While the ALJ referenced and credited Dr. Chipman's June 2009 opinion (Tr. 19), he made no mention of Dr. Chipman's April 2009 letter, nor did he indicate how he weighed the medical opinion of Dr. Chipman regarding this letter. Medical opinions "are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and . . . physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Under this definition, the

Court finds Dr. Chipman's letter constitutes a medical opinion of a treating physician and as such may be due the deference stated in the Regulations. *See* 20 C.F.R. § 404.1527(d).

While the ALJ is not required to specifically refer to every piece of evidence used in making his decision, the ALJ's decision as a whole must be supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). A decision is not based upon substantial evidence if it focuses on one aspect of the evidence while disregarding other contrary evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Failure to specify the weight given to evidence contrary to the ALJ's decision, or the reason for giving no weight, has been found to be reversible error. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *Krueger v. Astrue*, No. 2:06-cv-465-Ftm-29SPC, 2008 WL 596780, *11 (Feb. 29, 2008 M.D. Fla) (quoting *Nyber v. Commissioner*, 179 Fed. Appx. 589, 590 (11th Cir. 2006))[8].

Case law and the Regulations provide that an ALJ may discount the opinion of a treating physician where there is good cause to do so. The Eleventh Circuit has concluded "good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or, (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436,

---

[8] Unpublished opinions may be cited throughout this report and recommendation as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

1440 (11th Cir. 1997)). An ALJ must clearly articulate his reasons for electing to disregard the opinion of a treating physician. *Id.* at 1241. Failure to state with particularity the weight given to medical opinions or reasons for rejecting a medical opinion is reversible error. *Sharfarz*, 825 F.2d at 279. "Without the ALJ stating the specific weight given to different medical opinions and the reasons therefor, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence." *See, e.g.*, *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985). Therefore the Eleventh Circuit has found a court should decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

Remand is proper, even when it is possible the ALJ considered and rejected the medical opinion in question, yet "without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (remanding a case, in part, due to the ALJ's failure to mention or specify the weight given to a treating physician's opinion despite mentioning the physician in the decision); *see also Wiggins v. Schweiker*, 679 F.2d 1387, 1389-90 (11th Cir. 1982) (remanding a case where the ALJ did not mention or even allude to a treating physician's second report, let alone state the weight given to that physician's evidence); *Kruger,* 2008 WL 596780 at *11 (remanding a case due to the ALJ's failure to consider a medical opinion that conflicted with the ALJ's decision and directing the ALJ make a determination of the weight given to the omitted opinion and any reason for giving the opinion no weight); *Nyberg,* 179 Fed. Appx. at 592 (remanding a case where the ALJ did not mention a treating physician's opinion that was contrary to the ALJ's decision and where the potential impact of the opinion is heavily

disputed by the parties).

In the present case, the ALJ claimed he gave "greater weight" to the "reports and opinions of . . . Chipman . . . ." (Tr. 18). It is clear from the record that the ALJ did credit Dr. Chipman's June 2009 questionnaire, at least in part, however it is unclear what weight, if any, the ALJ gave to Dr. Chipman's April 2009 letter. The ALJ fails to make any reference to Dr. Chipman's letter (Tr. 531) in his decision. Perhaps the ALJ considered it inconsistent with the subsequent June 2009 questionnaire. But after the ALJ agreed to leave the record open to receive such a letter, he should have made a finding on the weight given the opinion expressed in the letter. Although the ALJ has wide latitude to evaluate the weight of the evidence, he must do so in accordance with the Regulations and the prevailing precedent.

This is not a case where the unmentioned evidence would support the ALJ's decision, and thus the outcome would not change regardless of the weight given to the evidence. This is a situation where the unmentioned evidence, and the VE's testimony on Plaintiff's need to elevate her legs, if given great or significant weight could conceivably change the outcome that the Plaintiff can perform past relevant work. Since this evidence is contrary to other evidence in the record, according to Eleventh Circuit precedent the ALJ's decision is not based on substantial evidence. *See McCruter*, 791 F.2d at 1548.

This case is not analogous to *Dyer* where failure to mention a piece of evidence was found to be harmless error. In *Dyer*, the court found failure to mention the plaintiff was taking Lortab for pain to be harmless. *See Dyer*, 395 F.3d 1206. Whereas in the instant case, the ALJ has failed to mention a medical opinion from a treating physician stating a requirement that, if accepted as true, could change the ALJ's decision. The present case

12

is more analogous to the Eleventh Circuit decisions in *Winschel* and *Wiggins*.[9] In those cases the ALJs failed to mention a medical opinion of a treating physician, the opinions were contrary to the ALJ's decision, and the cases were remanded due to the failure of the ALJ to specify the weight given to the treating physician's medical opinion or due to the failure of the ALJ to specify the reasons for rejecting or discrediting the medical opinion of a treating physician.

Under Eleventh Circuit precedent, the ALJ's failure to mention, discuss, credit, or discredit the April 2009 opinion from Dr. Chipman is a reversible error. The stated restrictions in the letter, if adopted by the ALJ, would change the VE's recommendation that the Plaintiff can perform her past relevant work; as such, the possibility of this restriction needs to be examined closely. The ALJ found the Plaintiff's pain in her right knee to be a severe impairment (Tr. 18-19). The VE testified Plaintiff's requirement to elevate her legs above hip level would eliminate all possible past relevant work (Tr. 60-61). The weight afforded to Dr. Chipman's opinion on this issue could make a difference in the ALJ's final decision. As it is impossible for the Court to tell if the ALJ credited or discredited Dr. Chipman's April 2009 opinion this case must be remanded for further consideration.

## V. CONCLUSION

Upon review of the ALJ's decision and the underlying record, the Court finds for the reasons stated herein, the decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. 405(g). The case is **REMANDED** for additional proceedings

---

[9] The Court recognizes that the *Winschel* opinion was issued after Plaintiff had filed her brief in this case, yet before Defendant had filed its brief. However, it is a published opinion and therefore controlling law in the Eleventh Circuit.

consistent with this Order and Opinion.

On remand, the ALJ must consider all medical opinions of Dr. Chipman and give the proper weight to the opinions and statements of each as required by the law of this circuit. *See Lewis,* 125 F.3d at 1440-41; *Sharfarz*, 825 F.2d at 279-81.  If the ALJ finds reason to disregard a medical opinion of Dr. Chipman, he must provide specific reasons for doing so and these reasons must be supported by substantial evidence in the record.  On remand, the ALJ may reopen the record and accept any additional evidence deemed appropriate

Plaintiff Hart is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act.  *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

**Directions as to Judgment:**

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.  The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the Commissioner's final decision to award benefits.  *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P. 54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides

otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added).

This Order and Opinion does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.

**DONE AND ORDERED** at Jacksonville, Florida this 19th day of September, 2011.

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record